## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| BMC SOFTWARE, INC., ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | Case No. 1:17-cv-01074 |
| v. ) | Hon. Liam O'Grady |
| ) | |
| CHERWELL SOFTWARE, LLC, ) | |
| ) | |
| *Defendant.* ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Dismiss or, in the

Alternative, to Transfer Venue (Dkt. No. 38). Also before the Court is Plaintiff's Motion to Take

Venue Discovery (Dkt. No. 50). For the following reasons and for good cause shown, Plaintiff's

Motion is **DENIED** and Defendant's Motion is **GRANTED** in part and **DENIED** in part. The

Court finds that venue in the Eastern District of Virginia is improper under 28 U.S.C. § 1400(b)

and the case is forthwith **TRANSFERRED** to the District of Colorado, pursuant to 28 U.S.C. §

1406(a), for further proceedings.

Plaintiff BMC Software, Inc. (BMC) alleges that defendant Cherwell Software, LLC

(Cherwell) infringes on several information technology service management patents. BMC

previously filed infringement cases against Cherwell in the Eastern District of Texas and the

Northern District of Texas. Dkt. No. 39 at 3-4. In the Eastern District of Texas case, BMC sought

and received venue discovery pertaining to Cherwell's contacts with both that District and the

Northern District of Texas. *Id.* After determining that venue was improper in both Districts and

those actions were accordingly dismissed, BMC commenced the instant litigation. *Id.* at 4.

BMC is incorporated in Delaware and has its principal place of business in Texas. Compl. ¶ 1. Cherwell is incorporated in Delaware and has its headquarters and principal place of business in Colorado. Dkt. No. 39 at 2. BMC alleges that venue is proper in this district because Cherwell has a regular and established place of business in Ashburn, Virginia. Specifically, BMC alleges that Cherwell maintains and operates servers that "run its business and perform the very activities that give rise to this lawsuit." Dkt. No. 43 at 1. For this proposition, BMC cites to Cherwell's customer literature, which identifies the Ashburn server as a hot site where customer data is replicated in real time. *Id.* Cherwell admits that it owns servers that operate out of Ashburn, Virginia (the Ashburn servers). *Id.* However, those servers are held within a single rack in a data center owned by the Zayo Group, a third party. Dkt. No. 39 at 6. Cherwell employees physically interact with the servers only once or twice per year; most maintenance is done remotely. *Id.* Cherwell admits that the servers are a hot site, meaning that they actively backup all information off of Cherwell's primary servers, housed in Colorado. *Id.* In the event of a catastrophic failure of the servers in Colorado, the Ashburn servers ensure continuity of operations. *Id.* The Ashburn servers have never been used for this purpose. *Id.*

As noted, Cherwell is headquartered in Colorado and the primary servers are located in Colorado. Cherwell's allegedly infringing products were designed and developed in Colorado. The Colorado office approves all sales, issues invoices, and receives payment.

*Venue Discovery*

As a preliminary matter, BMC has moved for additional venue discovery before disposition of Cherwell's motion to dismiss, arguing that Cherwell's position that the Ashburn servers are simply back-ups for the primary servers is belied by Cherwell's labelling of the site as a "hot site" in its promotional literature. Dkt. No. 50 at 1. The Court finds no inconsistencies

among the facts proffered by the parties. A "hot site" is defined as a back-up site for customers whose businesses are dependent on computers. *See, e.g., Comdisco Disaster Recovery Servs., Inc. v. Money Mgmt. Sys., Inc.,* 789 F. Supp. 48, 50 (D. Mass. 1992).

The Court has broad discretion whether to order venue discovery. *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978). Here, BMC offers only conclusory assertions and speculation that the Ashburn servers may be more integral to the business than Cherwell asserts. The Court finds that there is no indication of fraud or misconduct as to Cherwell's affidavits and no reason to believe that venue discovery would alter the outcome of the venue analysis. Accordingly, the motion to take venue discovery is denied. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.,* 334 F.3d 390, 402-403 (4th Cir. 2003). The Court has sufficient facts before it to determine whether venue in the Eastern District of Virginia is proper under 28 U.S.C. § 1400(b).

### *§ 1400(b) Factors*

The Federal Circuit recently clarified the three general requirements for venue under 28 U.S.C. § 1400(b): (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant. *In Re Cray Inc.,* 871 F.3d 1355, 1360 (Fed. Cir. 2017). The Court concludes that venue is improper in this district under all three prongs of the *Cray* test.

### *Physical Place in the District*

It is uncontested that Cherwell does not sell its products from a physical location in this district. It does not operate any offices, warehouses, or retail locations in this district. It neither owns nor leases land in this district. Instead, Plaintiff argues that ownership of servers stored in this district constitutes a physical place that satisfies the requirements in *Cray*. The Court

disagrees. Servers are not real property; they are personal property. To the extent the servers provide "space" from which a business may operate, any such space would be virtual space and virtual space explicitly fails the *Cray* test. *Id.* at 1362 ("[§ 1400(b)] cannot be read to refer merely to virtual space"). Accordingly, the Court finds that Cherwell does not have a physical place in this district, merely a virtual space.

*Regular and Established Place of Business*

As for the second prong, the Federal Circuit stressed that the *Cray* test anchors the "regular and established place of business" inquiry to "a physical, geographical location in the district from which the business of the defendant is carried out." *Id.* at 1362. The *Cray* court cautioned that a court evaluating "regular" and "established" should be guided by plain meaning of the terms. *Id.* "Regular" is defined as "steady, uniform, orderly, and methodical"; and "established" defined as "settled certainly or fixed permanently". *Id.* The *Cray* court cautioned that "sporadic activity cannot create venue." *Id.* (citing *Philips v. Baker*, 121 F.2d 752, 756 (9th Cir. 1941)).

Cherwell's servers, held on a single rented rack in a warehouse do not constitute a regular and established place of business. *See Regents of Univ. of Minn. V. Gilead Sciences, Inc.*, 2017 WL 4773150, *7 (D. Minn., Oct. 20, 2017) (finding that small storage lockers rented in the district that hold defendant's pharmaceutical products do not constitute a regular and established physical presence in the district under the *Cray* test). To begin with, as noted *supra* regarding physical place, the servers do not constitute a physical, geographical location in the district from which the business of the defendant is carried out since they are personal property, not real property. Cherwell has submitted an affidavit asserting that the Ashburn servers have never been activated for the purposes of supporting Cherwell's clients. Rich Decl. ¶ 15. While BMC seeks

4

venue discovery to confirm that assertion, the Court finds that even had the Ashburn server been occasionally activated from its hot site status to be Cherwell's primary server, such activation would only constitute sporadic activity and necessarily fail the second prong of the *Cray* test. Accordingly, the Court finds that the Ashburn servers do not constitute a regular and established place of business.

*Place of the Defendant*

The *Cray* court noted that relevant considerations in applying the third prong of *Cray* test include whether "the defendant owns or leases the place, or exercises other attributes of possession or control." *Cray* at 1363. The court cautioned, though, that "the mere fact that a defendant has advertised that it has a place of business . . . is not sufficient; the defendant must actually engage in business from that location. *Id.* Here, BMC argues that because Cherwell has advertised the Ashburn servers as a part of its business model, venue is proper. Dkt. No. 43 at 7-8. This reasoning is plainly insufficient to establish venue. The undisputed facts establish that Cherwell rents a server rack from a third party that owns the data warehouses in Ashburn. The "place" in question, then, is not Cherwell's place, but the third party's place. While Cherwell rents the server rack and rented space can frequently be the place of the renter, Cherwell does not have the keys to the physical door, as would be the case with a rented shop, warehouse, distribution center, or office. The Court finds that a small physical space of limited purpose, such as a storage rack for a specific piece of personal property cannot satisfy this prong of *Cray*. *See Regents*, 2017 WL 4773150 at *7.

In discussing the third prong, the *Cray* court noted that evaluating whether the place is the place of the defendant may be carried out by comparing the place in question with other places of the defendant in other venues. *Cray* at 1364. For example, if Cherwell were in the

business of sub-leasing server space such that it leased physical space from a third party then sub-leased to another third party at a profit, such a small physical space of limited purpose might constitute the heart of Cherwell's business. That is not the case here. While BMC in its oral arguments referred to the Ashburn servers as the hub of Cherwell's allegedly infringing activity, that hub lies instead in the District of Colorado. Accordingly, the Court finds that the Ashburn server site is not the "place of the defendant."

A finding that any prong of *Cray* is not satisfied is fatal to venue under § 1400(b). Here, the Court finds that none of the prongs have been satisfied. Venue is improper in this district and the Court next addresses the options for resolving that issue.

*Transfer*

Where venue is improper, courts are empowered to "dismiss, or, if it be in the interest of justice, transfer such case to any district or division in which [the case] could have been brought."[1] 28 U.S.C. § 1406(a). Generally, transfer is the favored outcome. *Cont'l Cas. Co. v. Argentine Republic*, 893 F.Supp.2d 747, 754 (E.D. Va. 2012). To this end, the Court must ensure that the transferee district will have venue and personal jurisdiction over the defendant. *L.G. Elecs. Inc. v. Advance Creative Computer Corp.*, 131 F.Supp.2d 804, 812 (E.D.Va.2001).

The Court finds that the District of Colorado has venue over Cherwell, because Cherwell maintains its physical headquarters there and the alleged infringement would have originated there, satisfying the requirements of 28 U.S.C. § 1400(b). This headquarters, to borrow BMC's phrasing, is the hub of allegedly infringing activity. The headquarters also represents an affiliation with the District of Colorado which is so continuous and systematic as to render Cherwell at home there. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017).

---

[1] BMC does not make an argument against transfer under § 1406, only under § 1404. § 1404 governs transfer where venue is proper in the transferor district under § 1400(b); § 1406 and its factors govern transfer where, as here, venue is improper.

6

Plaintiff has instituted this litigation now in three separate districts, each time avoiding the one district where venue and personal jurisdiction plainly rest – the District of Colorado. In the interests of justice and judicial economy, it is time for this case to be litigated in its proper venue. Accordingly, this case is transferred forthwith to the District of Colorado.

For these reasons and for good cause shown, Plaintiff's Motion to Take Venue Discovery is **DENIED** and Defendant's Motion to Dismiss or, in the Alternative, to Transfer Venue **GRANTED** in part and **DENIED** in part. The Court declines to dismiss the case, finds that venue in the Eastern District of Virginia is improper under 28 U.S.C. § 1400(b), and the case is forthwith **TRANSFERRED** to the District of Colorado for further proceedings.

It is so **ORDERED**.

Liam O'Grady
United States District Judge

December 21, 2017
Alexandria, Virginia